# United States District Court
# Northern District of Indiana

ROBERT SYSTER,                )
                             )
              Plaintiff,      )
                             )
       v.                    )        Civil Action No. 1:08-CV-172  JVB
                             )
                             )
NORTHWEST AIRLINK/           )
PINNACLE AIRLINES, INC.,     )
                             )
              Defendant.     )


## OPINION AND ORDER

This matter is before the Court on the motion of Defendant Pinnacle Airlines, Inc. for

summary judgment (DE 41), and Plaintiff Robert Syster's motion for oral argument (DE 65).

For the reasons set forth below, the Court denies the motion for oral argument and grants

Defendant's motion for summary judgment.


**A.     Background**

Plaintiff Robert Syster began working for Defendant as a parts clerk at Defendant's Fort

Wayne location in 2003.  He filed charges of sex and age discrimination against Defendant in

2006 after having been passed over for a promotion.  The parties entered into a settlement

agreement regarding those charges on September 22, 2006, under which Plaintiff was promoted

to parts foreman at Defendant's Detroit operation.  On May 12, 2008, he was terminated from

employment.  He filed a new charge of discrimination with the U.S. Equal Employment

Opportunity Commission, claiming retaliation and age discrimination.  After receiving a Notice

of Right to Sue from the EEOC, Plaintiff filed this action, charging breach of the settlement

agreement, retaliation, and age discrimination.

Jurisdiction is based on both 28 U.S.C. §1331, federal question jurisdiction, and 28 U.S.C. § 1332, diversity jurisdiction. Plaintiff is a citizen of Indiana, while Defendant is incorporated in Tennessee, with its principal place of business in Memphis.

**B.      Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set

forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628.. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).


**C.     Facts**

The relevant facts assumed to be true for the purpose of ruling on Defendant's motion for summary judgement are:

Defendant is a regional airline providing passenger service for Delta Airlines. It has maintenance bases and parts rooms in Fort Wayne, Indiana, and Detroit, Michigan. Plaintiff, who was born in 1948, began working for Defendant as a parts clerk in Fort Wayne in 2003. He was promoted to the position of parts lead in 2005. On February 13, 2006, he filed a charge of discrimination with the EEOC alleging age and sex discrimination after a younger, female employee was promoted to parts foreman in Fort Wayne instead of him. Plaintiff and Defendant resolved the charges with a settlement agreement on September 22, 2006, under which Plaintiff would be promoted to the next open parts foreman position of his choosing and Defendant agreed that it would not retaliate against Plaintiff as a result of the settlement agreement or the events underlying it.

In October 2006 Plaintiff was promoted to the parts foreman position in Detroit. His

duties included staffing the parts room, supervising parts room employees, processing parts, and working with the maintenance department to process parts and ship and receive other materials. To get to his job in Detroit, Plaintiff flew standby each day from Fort Wayne.[1] The settlement agreement did not address Plaintiff's commuting arrangements. After Larry Grant, then Plaintiff's supervisor, learned of Plaintiff's daily air travel to the work site in Detroit, he emailed him on January 19, 2007, warning him that if he continued to fly between Fort Wayne and Detroit each day, he would bear the risk of not being available to perform his job. Plaintiff told Grant that Jason Decker, his former supervisor, and Chris Harrison, Defendant's legal counsel, had approved the daily commuting arrangement when Plaintiff agreed to take the position in Detroit.

On January 26, 2007, Plaintiff emailed Grant expressing concerns about his work situation. He complained that Decker had not gone over all the responsibilities of his new job with him and called the failure to provide him with training and guidance a formula for failure.

Dan Brennan became Plaintiff's immediate supervisor around late January 2007. In January 2008, Paula Ford became director of materials for Defendant. Grant was her supervisor; She was Brennan's supervisor. On April 11, 2008, she became Plaintiff's direct supervisor, following Brennan's discharge.

On February 1, 2008, there was a severe snowstorm that resulted in Plaintiff's flight to Detroit being cancelled, preventing him from getting to work at his scheduled time. On February 5, 2008, Plaintiff received a written warning signed by Dan Brennan concerning Plaintiff's

---

[1]Throughout their briefs and other documents, the parties use "commuting" as synonymous with traveling by air from Fort Wayne to Detroit on a daily basis. The Court also uses the term in that sense on occasion in this Opinion.

failure to be at work by 8:00 am on February 1. Brennan did not agree with the write-up, but wrote it at Ford's insistence. Plaintiff had arranged to have his department covered on February 1, but the person he called in could not get out of his driveway because of the snowstorm and did not notify Plaintiff that he would not be in. Many people had trouble that day because of the weather; some were late and others did not get in at all, but Brennan knows of no one else who received a warning or write up for being late to work.

Around the time of the snowstorm incident, Brennan told Ford that Plaintiff had an agreement with Pinnacle that allowed Plaintiff's daily standby flights to Detroit. Ford told Brennan she did not believe the arrangement was fair and pressed him for information. Brennan suggested she ask Grant about it. Grant and Ford were close. Ford attended corporate meetings where Defendant's EEOC complaint was discussed.

On April 11, 2008, Ford sent Plaintiff a written warning about his failure to follow up to ensure that parts were sent out in a timely manner for repair, after she learned that a flap and landing gear that had been in his department for over a month had not been sent out for repair.

Sometime before April 17, 2008, Defendant became concerned about some missing hydraulic pumps, including a pump identified as part number 887055, serial number MX645321, that it had sent to Eaton Aerospace, one of its repair vendors, under repair order 637889DW. A hydraulic pump is what is known in the airline industry as a rotable part, meaning that it can be repaired or rebuilt many times. Rotable parts are tracked with serial numbers; they are thrown away only rarely. According to Defendant's General Maintenance Manual, Chapter 6-11, before a rotable part is discarded, it must be determined to be beyond economical repair (BER). The director of quality assurance is responsible for determining which parts are BER. A BER part is

to be tagged with a rejected parts tag before it is discarded.

Apparently in response to a request from Defendant, on April 17, 2008, Essie Williams, an employee of Eaton Aerospace, informed Defendant's supervisor of materials Cindy Victory that Eaton had one part ready to ship in "as-is" condition and that it had sent out RO-637889DW, on March 12, 2008. The part sent to Eaton as RO-63788DW was a part that Defendant had instructed Eaton to ship back as un-repaired.

On April 24, 2008, Cindy Victory emailed Plaintiff asking him to notify her when RO-637899DW was received. Later that day, Duane Hankins, the Detroit maintenance base manager, sent Ford an email suggesting that she ask Plaintiff about a hydraulic pump that Plaintiff had instructed someone to throw out several days earlier. Ford emailed Plaintiff to ask about the incident. On April 25, Plaintiff emailed Ford that "the pump was bagged with a red scrap tag on it" and that it had been disposed of. ( DE 51-7, Pl. Designation of Evidence, Ex. BB). He told her that vendors often ship back broken and replaced parts with the repaired parts. In response, Ford asked if anyone had read the paperwork with the unit that had been thrown out and whether anyone had contacted Repairs about it, among other things.

Plaintiff describes the incident as follows: sometime in late April, Gerald Hankins (Duane Hankins' father and a parts department employee who worked under Plaintiff) called across the parts room to Plaintiff and told him about a bag of parts that he said looked like pieces of a hydraulic pump with a red scrap tag. Plaintiff told Hankins that if the contents of the bag had a red scrap tag, the bag should be thrown out.

Plaintiff assumed the pieces of the hydraulic pump in the bag were broken pieces of a repaired part; he did not know if the bag contained a complete disassembled pump. He did not

read the tag that accompanied the bag of parts or look for a serial number.

Ordinarily when the parts department received red-tagged scrap parts, they were broken and replaced pieces such as nuts and bolts, that the repair vendor would send back with a repaired part. No one in the parts department who was questioned about the matter recalled receiving scrap pieces that did not come with a repaired part. According to Eaton, the only time it red tagged an item as scrap is when it replaces parts and the customer requests that the removed parts be returned. No repaired part accompanied the disassembled pieces in the bag that was thrown away.

On May 2, 2008, Ford placed Plaintiff on administrative leave pending the outcome of an investigation into the unauthorized disposal of company property. She asked Terry Hodge, Defendant's quality assurance auditor, to investigate the incident. Ford assumed that the bag of parts Plaintiff had told Gerald Hankins to discard was the missing disassembled hydraulic pump that Eaton had shipped on March 12, 2008. Ford supplied Hodge with the part and serial numbers and told him he could call Eaton about the part. Ford estimated the value of the part she believes was discarded at $25,000.

As part of the investigation, Sherri Evans emailed Hodge that she saw Darrell Lesko open a box containing a plastic bag with a disassembled pump in it. She believed there was a red tag in the bag with the part. She said the bag sat around for a few days before Gerald Hankins asked Plaintiff what to do with it. Jeff Luktish told Hodge in an email that the part sat on a table in the parts department for "quite a while" before it was finally put in the trash. (DE 51-8, Pl. Designation of Evidence, Ex. CC.)

Hodge had told Plaintiff in a telephone conversation that he did not believe Plaintiff had

done anything out or the ordinary. However, in the May 9, 2008, email report of his findings, Hodge stated that hydraulic pump part number 887055, serial number MX645321, had been sent to Eaton under RO-637889DW. It was tested and went through a teardown process. Eaton's estimate for the repair was $12,449.45. Defendant deemed the estimate too high and requested that the pump be returned as is. A new repair order was issued for the part to be sent to another vendor. Sometime after the part was returned to Detroit Parts, it was scrapped. Hodge pointed out that no one had authorized the pump to be scrapped and no BER paperwork had been filled out.

On May 12, 2008, Ford sent Plaintiff a termination letter, stating that the procedures of the General Maintenance Manual were not followed and that a company asset had been destroyed. She informed Plaintiff that he was terminated on the basis of the destroyed asset and other performance issues. He was replaced as parts foreman by Darrell Lesko, who was then about 27 years old. Gerald Hankins received a written warning for his role in the disposal of the part.

When Dan Brennan supervised parts foremen, the individuals in those positions ranged in age from about 28 to36. According to Brennan, all the parts foremen he supervised routinely threw away red-tagged items identified as scrap, but none were placed on administrative leave or terminated for it.

Mark Duell stated in his affidavit that during his time at Pinnacle, as a lead mechanic and foreman in Detroit and as Fort Wayne Base Manager from January 2003 through April 2006, when parts came back from vendors, they did not sit in unopened boxes for a month, but were opened right away.

In April 2008 Plaintiff received a performance review rating of 4.1 out of 5. He received a merit salary increase with his last paycheck. He had received compliments on his handling of the department from Shayne McIntyre, an inventory accountant, who in November 2007 wrote that Plaintiff and his team did a great job during an inventory audit. Mark Duell, who was Fort Wayne base manager for Defendant when Plaintiff worked in Fort Wayne, wrote to employees of Defendant at least three times in 2006 to support Plaintiff for the Fort Wayne parts foreman position that was given to a younger female employee. In his deposition, Dan Brennan described Plaintiff as steady, and a good employee.

### D.  Analysis

### 1.  *Plaintiff's Age Discrimination Claim*

To survive summary judgment in an age discrimination case Plaintiff must come forward with evidence from which a reasonable jury could conclude that his age was the but-for cause of Defendant's decision to fire him. *See Gross v. FBL Fin. Serv., Inc.*, 129 S.Ct. 2343, 2350 (2009); *Senske v. Sybase, Inc.*, 588 F. 3d 501, 506 (7th Cir. 2009). Plaintiff asserts that he can make out a claim for age discrimination by means of the indirect method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which he must show that 1) he is a member of the protected class; 2) that he was meeting his employer's legitimate expectations; 3) despite his performance, he suffered an adverse employment action; and 4) his employer treated similarly-situated employees who were substantially younger, more favorably. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008). If he establishes a prima facie case, the burden then shifts to Defendant to provide a legitimate, non-discriminatory reason for its

decision to terminate his employment. Once Defendant meets this threshold, Plaintiff may show that the proffered reason is a mere pretext for discrimination. *Id.* at 642. There is no dispute that Plaintiff belongs to the protected class for age discrimination purposes (he is 61 years old) and that his suspension and termination were adverse employment actions.

The parties disagree as to whether Plaintiff can establish the second and fourth elements of the prima facie case. Where, as here, Plaintiff argues that Defendant's expectations were disparately applied, the second and fourth elements are closely intertwined with the pretext analysis, and may be merged and considered together. *See id.; Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009). Accordingly, the Court will focus on the question of pretext, for without sufficient evidence of pretext, Plaintiff cannot show that he was meeting Defendant's legitimate expectations. *See Senske*, 588 F.3d at 507; *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006).

Pretext means a dishonest explanation, a lie. It is more than a mistake on the part of the employer; it is a phoney excuse. Showing pretext requires proof that the employer's explanation is unworthy of credence. *Faas*, 532 F.3d 633 at 642 (quotation marks and citations omitted). Plaintiff must point to evidence that Defendant's explanation is not the real reason he was fired, that it has no basis in fact, or is insufficient to warrant the termination decision. *Senske* at 507.

Defendant's stated reason for terminating Plaintiff is that he directed that a hydraulic pump valued at about $25,000 be thrown out, without following company procedures. Plaintiff maintains that there is a question of fact as to whether the parts he directed Gerald Hankins to dispose of were actually the missing hydraulic pump, and whether the bag contained a red scrap tag. He claims that there is a question of fact as to whether employees of Defendant routinely

threw out parts labeled as scrap without adverse employment actions. Plaintiff also maintains that there are fact issues as to whether the missing hydraulic pump was lost on account of a new inventory system, and whether Ford dishonestly directed the results of Hodge's investigation by giving him the serial number and part number. As discussed below, the fact that Ford supplied Hodge with identification numbers for the missing pump does not give rise to an inference that she dishonestly directed the investigation. Moreover, resolving all other issues in Plaintiff's favor, there is not enough to convince a reasonable jury that Defendant's reason for firing Plaintiff is a lie.

While Defendant's investigation into the matter may not have produced proof beyond a reasonable doubt that the pump parts Plaintiff told Gerald Hankins to discard were the disassembled hydraulic pump that Eaton sent back to Defendant in March 2008, it was not such a farfetched conclusion that it can said to be a lie. Eaton shipped a pump identified by RO-637889DW to the Detroit parts department in as is condition on March 12, 2008. Jeff Lukitsh, a parts department employee, signed for the part shipped from Eaton as RO-637899DW on March 14, 2008. Defendant's records indicated that RO-637899DW was part number 887055, serial number MX645321, and that there was no inventory record of the part having been received by the parts department. According to Lukitsh, the part that was thrown away had been sitting around the parts department for quite a while. Lukitsh stated that there was paperwork with the part, but he did not examine the paperwork. Neither did Plaintiff or Gerald Hankins. Moreover, Plaintiff has offered no evidence as to what the bag of hydraulic pump parts might have been, if it was not the missing pump shipped from Eaton on March 12, 2008.

While Plaintiff and several other witnesses state that there was a red scrap tag on the part,

he observed it from across the room and did not read the tag. Despite the red tag, several employees, including Plaintiff, recognized the pieces in the bag as a disassembled hydraulic pump, a rotable part for which, under the manual, BER paperwork was required before it could be disposed of. Even though scrap parts are ordinarily discarded without BER paperwork, it was not unreasonable of Defendant to expect that Plaintiff would inquire further once he recognized the bag of parts as a disassembled hydraulic pump.

To the extent that the other incidents which gave rise to written warnings to Plaintiff contributed to Defendant's decision to terminate him, the Court also concludes that Plaintiff has not pointed to evidence from which a reasonable jury could conclude that they were pretexts for unlawful discrimination. On his failure to have the Detroit parts department covered as the result of a snowstorm, while there is evidence that other employees who did not report to work that day were not disciplined, there is no evidence that another foreman was absent or that any other department failed to open on time. Moreover, Plaintiff had been expressly warned that his daily commute by air was at his own risk. Neither does Plaintiff offer evidence to suggest that the incident giving rise to Paula Ford's written warning concerning the flap and landing gear was made up. He merely defends himself by claiming he wasn't trained properly. Accordingly, summary judgment will be granted on his age discrimination claim.

## 2. Plaintiff's Retaliation Claim

Plaintiff's previous EEOC claim was based on sex and age discrimination. Both Title VII, banning sex discrimination in employment, and the ADEA contain anti-retaliation provisions. To establish a prima facie case of retaliation under the indirect method, on which

Plaintiff relies, an employee must show that he engaged in statutorily protected expression, met his employer's legitimate expectations, suffered an adverse employment action, and was treated less favorably than similarly situated employees who did not engage in statutorily protected expression. *Kodl v. Bd. of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). If the employee establishes a prima facie case of discrimination, the employer must present evidence of a non-discriminatory reason for the employment action, whereupon the employee must present evidence of pretext. *Tomanovich v. City of Indianapolis*, 475 F.3d 656, 663 (7th Cir. 2006).

For the reasons set out in the discussion of the Plaintiff's age discrimination claim, the Court concludes that Plaintiff cannot establish several of the elements of his prima facie case of discrimination: that he was meeting Defendant's legitimate expectations, that other, similarly situated employees who had not engaged in the protected expression were treated more favorably, or that Defendant's proffered reason for his termination is pretextual.

**3.      *Plaintiff's State Law Claim for Breach of Contract***

Plaintiff claims that Defendant breached the anti-retaliation clause of the settlement agreement on his first EEOC complaint by its discriminatory treatment of him after being hired as parts foreman and by terminating him. His chief complaint is that Defendant was "disingenuous" with respect to his flying from Fort Wayne to Detroit each day. (DE 53, Pl. Br. at 22). However, Plaintiff concedes that the settlement agreement is silent about this issue. In fact, Plaintiff specifically asked that it contain something about commuting. Defendant, through its attorney, declined to do so, telling him he was free to commute, but it would be by standby.

Furthermore, Defendant never prohibited him from commuting, but instead warned him of the risks of that means of getting to work.  Moreover, because the Court has concluded that he has not presented a triable issue as to whether his termination was in retaliation for protected activity, he cannot rely on that ground to support his breach of contract claim.  Accordingly, summary judgment is also appropriate on Plaintiff's breach of contract claim.

**E.      Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment (DE 41) and DENIES Plaintiff's motion for oral argument (DE 65).

SO ORDERED on May 28, 2010.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division